Mary M. Sun (Cal Bar No. 288903)
LAW OFFICE OF MARY SUN
128 E. Huntington Drive, Ste. B
Arcadia, CA 91006
Tel: 626.616.6526/Fax: 626.303.7882
E-mail: mary@sunlegalgroup.com

Attorney for Creditors, J&J Freight Solutions, LLC., and Golden J Group, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>    Peinan Hu,<br><br>        Debtor | Case No: 2:22-bk-15286-VZ<br><br>Adv. No.<br><br>Chapter 13 |
| J & J FREIGHT SOLUTIONS, LLC, a California Limited Liability Company; GOLDEN J GROUP, INC., a California Corporation<br><br>        Plaintiffs<br><br>            v.<br><br>Pei-nan Hu<br><br>        Defendant | Hon. Vincent P. Zurzolo<br><br>**COMPLAINT TO DETERMINE DISCHARGEBILITY PURSUANT TO 11 U.S.C. §§ 523(a)(4) and (6).**<br><br>**Status Conference**:<br>Date:    To Be Set by Summons<br>Time:    To Be Set by Summons<br>Location: United States Bankruptcy Court<br>             Central District of California<br>             255 E Temple St,<br>             Los Angeles, CA 90012 |

**TO THE HONORABLE VINCENT P. ZURZOLO, FEDERAL BANKRUPTY JUDGE, AND TO DEBTOR PEI-NAN HU AND HIS ATTORNEY OF RECORD, AND TO ALL INTERESTED PARTIES:**

Plaintiffs J & J FREIGHT SOLUTIONS, LLC, a California Limited Liability Company and, GOLDEN J GROUP, INC., a California Corporation) (cumulatively referred to as "Plaintiffs"), as unsecured creditors to the bankruptcy estate of In re Pei-nan Hu ("Debtor/Defendant") in Case No. 2:22-bk-15286-VZ holding an unsecured and contingent claim in the amount of at least $3,000,000

respectfully represent and allege with this Complaint as follows:

## STATEMENT OF JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding ("Adversary Proceeding") pursuant to 28 U.S.C. §§ 151, 157 and 1334, and 11 U.S.C. §§ 105, 1328(c)(2), 523(a)(4), and (6) of the Bankruptcy Code and Local Rules and Orders of the United States District Court for the Central District of California governing the reference and conduct of proceedings arising under or related to cases under Title 11 of the United States Code,

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

3. Venue for this Adversary Proceeding properly lies in this Judicial District in that this civil proceeding arises under Title 11 of the United States Code as provided under 28 U.S.C. § 1409.

4. This Adversary Proceeding arises out of and relates to the Chapter 13 bankruptcy case of *Pei-nan Hu*, Case No 2:22-bk-15286-VZ, on the docket of this Court, and a certain state court action entitled *J & J FREIGHT SOLUTIONS, LLC*, a California Limited Liability Company*, et al. v. JIANHUA LI, et al.*, Superior Court of Los Angeles case no. 19GDCV01347 ("State Action"). The Debtor's current bankruptcy case was commenced by the filing of a Voluntary Petition for Relief under Chapter 13 of Title 11 of the United States Bankruptcy Code on September 28, 2022 in the Federal Bankruptcy Court for the Central District of California, Los Angeles Division.

5. The Debtor/Defendant's mailing address from the Court's Docket is: Pei-nan Hu, 1936 Paso Real Ave., Rowland Heights, CA 91748

6. Plaintiffs consent to the Bankruptcy Court entering judgment in this matter.

## STATEMENT OF STANDING

7. The Plaintiffs, as creditors of the Debtor's bankruptcy estate, have standing to prosecute this Adversary Proceeding under 11 U.S.C. § 523.

## GENERAL ALLEGATIONS

8. Plaintiffs are informed and believe and thereon allege the following facts to justify that their claim of approximately $3,000,000.00, not including additional attorneys' fees, punitive damages, and any and all pre-petition interest, against Debtor/Defendant Pei-nan Hu shall be deemed

non-dischargeable under Sections 523(a)(4) and/or 523(a)(6) of the Bankruptcy Code.  Defendant willfully engaged in conduct, including misappropriation and misuse of Plaintiffs' trade secrets, conversion and interference with Plaintiffs' prospective economic advantage, with the express intent, subjective intent to harm, or subjective belief to harm Plaintiffs is willful and malicious.

## FACTUAL ALLEGATIONS

9. Plaintiff J & J FREIGHT SOLUTIONS LLC ("J & J") is, and at all times herein mentioned was, a limited liability company duly organized under the laws of the State of California with its principal place of business located in the county of Los Angeles.

10. Plaintiff GOLDEN J GROUP, INC. ("GOLDEN J") is, and at all times herein mentioned was, a corporation duly organized under the laws of the State of California with its principal place of business located in the county of Los Angeles.

11. J&J and GOLDEN J are collectively referred to as "Plaintiffs."

12. Defendant Pei-nan Hu, ("Defendant"), is an individual residing in the County of Los Angeles, State of California.

13. JIAN HUA LI, also known as Nick Li ("Li"), is an individual residing in the County of Los Angeles.  Li is Plaintiffs J & J and Golden J's former operations manager who was responsible for J & J and Golden J's daily operations, including without limitation business development, customer relations, marketing, sales, and general decision-making related to J & J and Golden J's operations.

14. Li is Plaintiffs' former employee and a defendant in the State Action.

15. NENYIN TAN, also known as Terri Tan ("Tan"), is an individual residing in the County of Los Angeles.  Tan is the former executive assistant to the Plaintiffs' president, Jamie Huang ("Huang").  Due to her position, Tan had access to Plaintiffs' most confidential and proprietary files and information.

16. Tan is Plaintiffs' former employee and a defendant in the State Action.

17. Tan and Defendant worked at the same furniture store from or about 2016 to 2017. Plaintiffs are informed and believe, and thereon allege that Tan and Defendant are acquaintance and know each other since or about 2016.

18. Plaintiffs are informed and believe, and thereon allege that CTU CONNECTION ("CTU") is a California Corporation with its principal place of business located in the County of Los Angeles. CTU is an entity formed by Li and Tan on or about January 18, 2019, months before they quit their employment at Plaintiffs.

19. CTU is, and at all relevant times mentioned herein was, in the same transportation business as Plaintiffs, that CTU provides the same kind of transportation services as Plaintiffs, services the same areas as Plaintiffs, targets the same service providers and customers as Plaintiffs, and that its physical location is situated in the same vicinity as Plaintiffs.

20. Plaintiffs are informed and believe, and thereon allege that EMC Transportation Inc. ("EMC") is a California Corporation with its principal place of business located in the County of Los Angeles, State of California.

21. EMC is, and at all relevant times mentioned herein was, in the same transportation business as Plaintiffs, that EMC provides the same kind of services as Plaintiffs, services the same areas as Plaintiffs, targets the same service providers and customers as Plaintiffs, and that its physical location is even situated in the same vicinity as Plaintiffs. EMC is a competitor of Plaintiffs.

22. Plaintiffs do not know the true names and capacities of the defendants sued herein as Does 1 through 20, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to allege said defendants' true names and capacities as soon as Plaintiffs ascertain them.

23. At all times relevant to this action, Defendant, including those fictitiously named, was the agent, servant, employee, partner, joint venturer, alter ego, or surety of each other defendant, and was acting within the course and scope of that relationship, with the knowledge and consent and/or ratification of each other defendant in doing the things alleged in this complaint, and in such a manner to make each of them liable for the acts and omissions of each and all of the other defendants.

24. At all times relevant to this action, Defendant, knew or should have known that Defendant's conduct was wrongful, and conspired, work in concert, or committed other acts to aid and abet each others in willfully committing the wrongful conduct against Plaintiffs with express intent or subjective intent to cause Plaintiffs to suffer harm.

25. Plaintiffs are informed and believe and thereon allege that certain interests or legal relationships between the Defendant and others, have been transferred, sold or acquired such that the purchaser expressly or impliedly agreed to assume the predecessor's obligation, the purchase was a de facto consolidation or merger, the successor is a mere continuation of the predecessor, the transaction was fraudulently entered into to escape liability and that by agreement among the Defendant's liability for the acts and events herein alleged has been contractually specified among the Defendants, the exact terms and nature of which are unknown. When the true facts are ascertained, Plaintiffs will further amend the complaint to allege the true facts with respect to such successor(s) in interest, transfer and assignment of liability.

26. Defendant should be held jointly and severally liable for the acts of all other intentional tortfeasors named herein.

27. On or about July 12, 2019 and August 22, 2019, Li and Tan suddenly quit their jobs respectively. Prior to their departure, Li and Tan transmitted Plaintiffs' confidential and highly valuable trade secrets to themselves without Plaintiffs' knowledge and consent.

28. Using the misappropriated files, plaintiffs' proprietary information and trade secrets, Li and Tan secretly concealed from Plaintiffs that they had created CTU and started soliciting and doing business with Plaintiffs' customers and vendor drivers while they were still working for Plaintiffs.

29. On or about October 22, 2019, Plaintiffs filed a lawsuit against Li, Tan and CTU for misappropriation of trade secrets under Cal. Civil Code § 3426 et seq., breach of the duty of loyalty, conversion, interference of prospective economic advantages and unfair business competition.

30. On or around July 24, 2020, the state court found merit in Plaintiffs' claim and issued a Preliminary Injunction Order ("the Preliminary Injunction"), which prohibited CTU, Li and Tan and their alter egos from soliciting or doing business with Plaintiffs customers, drivers and other contacts listed in Plaintiffs' Preliminary Injunction Motion pending trial. The Preliminary Injunction also ordered all Plaintiffs' files and information removed by Li, Tan and CTU be returned to Plaintiffs within 30 days.

31. On or around August 6, 2020, Defendant HU, who is an acquaintance of Tan, an IT engineer and admittedly has no experience in the trucking and transportation industry, suddenly

COMPLAINT TO DETERMINE DISCHARGEABILITY

created a trucking company named EMC Transportation Inc. ("EMC").

32.    Plaintiffs are informed and believe, and thereon allege that once CTU was enjoined by the State Court Preliminary Injunction, Li and Tan disclosed Plaintiffs' trade secrets to Defendant in violation of the Preliminary Injunction.

33.    Defendant knew or should have known that the information disclosed by Li, Tan and CTU was protected trade secrets. However, Defendant accepted the disclosure willfully and intended to use the information to benefit himself, Li and Tan without regards to the harm that Defendant knew or should have known Plaintiffs would surely suffer.

34.    In possession of Plaintiffs' valuable trade secrets, Defendant created and operated EMC using Plaintiffs misappropriated trade secrets, converted property, with actual knowledge or subjective intent to harm, or a subjective belief that harm would occur to Plaintiffs. Defendant's continuous misappropriation and misuse of Plaintiffs' trade secrets to benefit himself despite his knowledge that Plaintiffs would suffer serious harm, is willful and malicious.

35.    On or about February 26, 2021, Defendant Pei-nan Hu was served with a copy of a State Court lawsuit filed by Plaintiffs against Li, Tan, CTU and others ("the State Court Action"). The Complaint alleged misappropriation of Plaintiffs' trade secrets, conversion, intentional interference business claims, among other claims.

36.    Since on or after February 26, 2021, Defendant knew or should have known of the misappropriation and misuse of Plaintiffs' trade secrets as he was on notice by service of the complaint alleging said misappropriation.

37.    Despite having notice, Defendant willfully continued to misuse Plaintiffs' trade secrets in obtaining business from Plaintiffs' customers and service from Plaintiffs' vendor drivers for EMC and/or CTU. Defendant further refused to return Plaintiffs trade secret property.

38.    Defendant further willfully acquired Plaintiffs' non-trade secret property ("non-trade secret property") against Plaintiffs will and used and/or refused to return said property. Defendant used Plaintiffs property, i.e. confidential documents, contracts, templates, terminal password and entry system and other information distinct from the trade secrets alleged above, and of considerable value including without limitation (1) login user names and passwords for Plaintiffs' computers; (2) the

Plaintiffs' PIN for the federal tax e-filing system; (3) Plaintiffs lock combination for its gate; (4) Plaintiffs trucking fee rate sheet; (5) Plaintiffs FedEx account number and password; (6) Plaintiffs GPS system's user ID and password; (7) tax identification numbers of the Plaintiffs' drivers; (8) Plaintiffs' user names and passwords with regulatory agencies; (9) knowledge and information regarding how Amazon delivers to customers; (10) Social security numbers belonging to Plaintiffs' staff, officers, and vendors; (11) Plaintiffs' insurance agent, tax preparer, paperwork agent, and their contact information; (12) Plaintiff Golden J's SCAC number, DOT and other license numbers; (13) Plaintiff Golden J's billing templates and bill of lading form; (14) websites and other information regarding trucking registration; and (15) various email templates with sample verbiage to be included, to the financial harm of Plaintiffs. Defendant's said conduct was a substantial factor in causing Plaintiffs financial harm.

39. Defendant's willful misappropriation and conversion of Plaintiff's trade secrets was intended to take business away from Plaintiffs with the actual knowledge or subjective intent to harm, or a subjective belief that harm is substantially certain to cause Plaintiffs irreparable and grave financial harms sufficient to drive Plaintiffs out of business.

## FIRST CAUSE OF ACTION

(Misappropriation Of Trade Secrets Against Defendant)

[11 U.S.C. § 523(a)(6)]

40. Plaintiffs incorporate by this reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

41. Pursuant to 11 U.S.C. § 523(a)(4) and (6), the Court shall except from the Debtor/Defendant's discharge any debt:

> **(a)** A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> **(4)** for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
> **(6)** for willful and malicious injury by the debtor to another

7

entity or to the property of another entity;

42. Days before Li and Tan quit Plaintiffs' employ, they downloaded, removed and transmitted to themselves (their personal emails) Plaintiffs' valuable trade secrets, confidential and other confidential and proprietary information to themselves with Plaintiffs' knowledge and consent.

43. Plaintiffs are informed and believe and thereon allege that, thereafter, Li and Tan disclosed Plaintiffs' valuable trade secrets, confidential and proprietary information to Defendant.

44. Together, Li, Tan and Defendant created and operated CTU and/or EMC to misuse Plaintiffs' trade secrets with the intent to divert business from Plaintiffs' customers and services from Plaintiffs' vendor drivers to CTU and/or EMC.

45. In doing so, Defendant intended to financially benefit himself while knowing his misuse of Plaintiffs' trade secrets would certainly injure Plaintiffs financially, destroy Plaintiffs' reputations, and wreck Plaintiffs' business entirely.

46. Plaintiffs are informed and believe and thereon allege that the trade secrets disclosed to Defendants are:

(1) Plaintiffs' customer names and customer account information, the best person to contact at each customer with decision making power, and that person's direct line or personal phone number and/or email address;

(2) the best or most competitive rate to charge each customer for each delivery within each geographic area, and the best or optimal rates to charge for full container loads versus less than container loads ("LCLs");

(3) the order history of each customer, and the kinds of service that each customer prefers;

(4) knowledge and understanding of the proper or ideal way to communicate with which customers;

(5) how to calculate profit margins and what cost or expense factors to use or account for;

(6) comparisons, compilations, and analyses of port and terminal fees, the best times to enter each port or terminal, and the best times or conditions when port delivery fees are lowest, wait times, area charges, trucking fees, chassis fees, and variance charges;

(7) lists of individual drivers' names, personal phone numbers, addresses, personal tax identification numbers, employer identification numbers, driver license numbers, vehicle identification numbers, and loan and insurance records and information;

(8) Plaintiffs' inside knowledge and notes of drivers' characteristics, service experience, performance history, and the rates the J Entities pay to each driver, and other compensation provided to each driver;

(9) knowledge and payment records for drivers showing the date, amount, year-to-date payment information, and which drivers were paid in cash;

(10) Plaintiffs inside knowledge and understanding of the complex relationships between truckers, customs brokers, terminals, ports, importers, and their business practices and their respective sensitivity to or tolerance for price variances;

(11) analyses and compilations of Plaintiffs' rates to charge;

(12) port entry passwords;

(13) the proper or best method to track trucks, and passwords to Plaintiffs' GPS tracking system;

(14) the types of insurance policies suitable or optimal for Plaintiffs' type of trade, from whom to purchase such insurance and at what rates;

(15) the best person to contact at each port, terminal, pier, chassis rental service, and other service providers, their hours of operation, and their direct email addresses and phone numbers; and

(16) the best person to contact for trailers, pallets, tires, repairs, recycling and other services, and their direct contact information.

47. Plaintiffs' trade secrets are not available to the general public and were developed and compiled by Plaintiffs over many years of expensive and time-consuming trial and error, observations, business and statistical analysis, and compilations performed and created by Plaintiffs.

48. The Plaintiffs trade secrets are highly valuable because such extensive, optimized, and integrated information regarding the wide variety of actors in the complex and fragmented trucking business (from customers, shippers, customs brokers, freight forwarders, vendors, terminals, and

many others) in Plaintiffs' organized and user-friendly format is not readily ascertainable in the public domain but was instead acquired only after years of pain-staking effort and experimentation to sort through, test, compile and optimize.

49. Possession by a competitor of Plaintiffs' trade secrets accumulated over many years of effort would give a competitor an enormous head-start and would show a competitor whom to contact for what and when, the optimal rates to charge whom and why, the best way to minimize costs and maximize profits, and the best general business practices for a trucking business—all without having to expend the enormous time, resources and money that Plaintiffs spent over many years to develop, integrate the optimize the information. Thus, the information constitutes trade secrets under Civil Code § 3426(d) that Plaintiffs did not want to share with any person, except for Tan and Li who were entrusted with using the information only in furtherance of Plaintiffs' business.

50. Plaintiffs maintained their trade secrets in files and documents stored in a password protected computer system and in Plaintiffs' locked office. Only Plaintiffs and their employees had access to the secured system. The information contained in the files and records was created solely by Plaintiffs exclusive possession and control, and it was intended to be used exclusively by Plaintiffs to maintain an edge over other competing businesses.

51. Plaintiffs are informed and believe, and thereon allege that Defendant knew the trucking business is complex, but lucrative and he agreed with Li and Tan to create and operate CTU and/or EMC using the misappropriated trade secrets without regards to the Preliminary Injunction order issued by the state court. The ongoing injury to Plaintiffs was intended by Li, Tan and Defendant.

52. As of today, neither Li, Tan, CTU, Defendant, or EMC has returned Plaintiffs' valuable trade secrets, confidential files and other proprietary information to Plaintiffs despite being ordered by the state court, showing that they have no intend to ever return Plaintiffs' property.

53. As a proximate and or direct cause of Li, Tan, Defendant, CTU and EMC's misconduct, Plaintiffs' suffered and continue to suffer great and irreparable harm.

54. As a result of Plaintiffs' trade secrets being stolen, Plaintiffs' competitiveness in the business was and continued to be weakened, causing Plaintiffs to suffer losses while Defendant and others, each of them, individually or together, reaped illegal gains in an amount according to proof at

1 trial.

2 55. As a proximate and direct cause of Defendant's misconduct committed individually or
3 on behalf of others, Plaintiffs have and continue to suffer loss in the form of lost business revenues,
4 goodwill, profits, business opportunities, increased overhead and costs, legal fees, and other forms of
5 injury in an amount not less than $3 million.

6 56. Under the totality of circumstances described herein, the imposition of statutory
7 punitive and exemplary damages under Civil Code § 3426.3 and an award of attorneys' fees to
8 Plaintiffs under Civil Code § 3426.4 against the Defendant is justified.

## SECOND CAUSE OF ACTION

(Conversion Against Defendant)

[11 U.S.C. §§ 523(a)(4), (6)]

57. Plaintiffs incorporate by this reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

58. Pursuant to 11 U.S.C. §§ 523(a)(4), and (6), the Court shall except from the Debtor/Defendant's discharge any debt:

> **(a)** A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> **(4)** for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; …
>
> **(6)** for willful and malicious injury by the debtor to another entity or to the property of another entity;

59. Plaintiffs own and maintain confidential documents, contracts, templates, and other information ("non-trade secret property") distinct from the trade secrets alleged above, and of considerable value.

60. Defendant Hu knew of the wrongful conduct of conversion by Li, and Tan, and created EMC to use Plaintiffs property willfully and maliciously injuring Plaintiffs.

61. The conversion of these items harmed Plaintiffs by (among other things) forcing

Plaintiffs to incur the costs of replacing all passwords and login information, costs to secure or replace lost information, expend significant time, resources and money to recover control of accounts, and otherwise attempt to rectify the situation. Additionally, some information that Defendant converted, such as the Plaintiffs' SCAC code and other DOT license numbers, cannot be replaced, thereby creating a need for Plaintiffs to constantly monitor any unauthorized use of Plaintiffs' and other third parties' confidential information at significant cost.

62. Tan and Li took the items alleged above from Plaintiffs without permission and shared and disclosed them with Defendant and his company, EMC for their own benefit and to the detriment of Plaintiffs.

63. Plaintiffs are informed and believe, and thereon allege that Tan was acting either by herself or under the orders and instructions of Li and/or Defendant Hu, EMC or CTU, or that they conspired with Tan in committing the theft against Plaintiffs.

64. Defendant acquired Plaintiffs' property without consent and used it and refused to return the property to Plaintiffs.

65. As a direct and proximate result of the conversion committed individually or jointly Tan, Li, Defendant, CTU, and EMC, Plaintiffs have suffered damages in an amount according to proof at trial but of not less than $3 million.

66. Defendant's conduct was a substantial factor in causing financial harm to Plaintiffs.

## THIRD CAUSE OF ACTION

(Intentional Interference With Prospective Economic Advantage Against Defendant)

[11 U.S.C. § 523(a)(6)]

67. Plaintiffs incorporate by this reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

68. Pursuant to 11 U.S.C. § 523(a)(6), the Court shall except from the Debtor/Defendant's discharge any debt:

> **(a)** A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

>**(6)** for willful and malicious injury by the debtor to
>another entity or to the property of another entity;

69. Plaintiffs have been in the trucking business for over ten years and have developed consistent and stable business relationships with its customers, drivers, and service providers. Based on those relationships and Plaintiffs' good reputation, Plaintiffs could reasonably expect a steady stream of future business from its customers and reasonable services from its service providers at a relatively steady price.

70. Defendant knowing Li and Tan, were Plaintiffs employees, who had access to Plaintiffs files and records, and familiarity with Plaintiffs business operations, used the information that they stole from Plaintiffs to interfere the relationship between Plaintiffs and their customers and vendor drivers.

71. Plaintiffs are informed and believe, and thereon alleged that during or after employment Plaintiffs, Defendant knowingly and intentionally performed acts to misappropriate the fruits of Plaintiffs trade secrets that were the result of long-term cultivation. These acts include without limitation misappropriating Plaintiffs trade secrets, making false or disparaging statements about Plaintiffs; and offering incentives or discounts to Plaintiffs customers and cash payments to vendor drivers that are neither customary in the trade nor lawful. Defendant HU and EMC's misconduct was committed with the intent to cause financial harm to Plaintiffs and did in fact cause significant financial harm to Plaintiffs.

72. Defendant HU should have known that his, Li, Tan, EMC and CTU's conduct would cause financial harm and disruption to Plaintiffs business and damage Plaintiffs reputation.

73. At all times relevant to this complaint, Plaintiffs are informed and believe and thereon allege that Defendant's intent was to disrupt the economic advantage of Plaintiffs for the benefit of Li, Tan, CTU, EMC and himself.

74. Plaintiffs are informed and believe, and thereon allege that Defendant HU knew or should have known that Li, Tan and CTU's conduct was wrongful and would cause financial harm to Plaintiffs.

75. Plaintiffs are informed and believe, and thereon allege that Defendant HU was on notice of Plaintiffs' claims and the state court's Preliminary Injunction order.

76. In defiance of the Preliminary Injunction, Defendant HU and EMC contacted and continues to contact and solicit Plaintiffs customers, drivers, vendors and other service providers on the no-contact lists in the Preliminary Injunction for CTU's benefit.

77. Plaintiffs are informed and believe and thereon allege that while soliciting business for CTU and/or EMC, EMC's agent, representative, affiliates, partners, and venturer made knowingly false statements to Plaintiffs' customers about Li, Tan, CTU, EMC, and Plaintiffs with the intent to cause financial harm to Plaintiffs.

78. The false statements placed Plaintiffs in a false light before their customers and exposed Plaintiffs to ridicule, contempt, hatred, or obloquy before their customers.

79. By doing so, Defendant expressly intended to disturb the business relationships between Plaintiffs and their customers or had subjective intent or subjectively knew that it was certain that the Plaintiffs' relationships would be disturbed.

80. As a direct and proximate cause of Defendant Hu, CTU and EMC's and others wrongful conduct, business that would be reasonably obtained by Plaintiffs was steered to CTU, EMC or other truckers in the trade. Said willful and malicious interference of business away from Plaintiffs caused Plaintiffs to suffer loss of revenue, loss of business opportunities, loss of goodwill and reputation in an amount according to proof at trial but not less than $3 million.

**WHEREFORE,** Plaintiffs pray for judgment for damages and a finding of non-dischargeable debts against Defendant under Sections 523(a)(4) and/or (6) of the Bankruptcy Code as follows:

### ON THE FIRST CAUSE OF ACTION

1. That Plaintiffs claim that total in the approximate amount of $3,000,000, or in any amount proven at trial against Debtor be deemed non-dischargeable under Section 523(a)(6) of the Bankruptcy Code.

### ON THE SECOND CAUSE OF ACTION

2. That Plaintiffs claim that total in the approximate amount of $3,000,000, or in any amount proven at trial against Debtors be deemed non-dischargeable under Sections 523(a)(4) and/or (a)(6) of the Bankruptcy Code.

### ON THE THIRD CAUSE OF ACTION

3. That Plaintiffs claim that total in the approximate amount of $3,000,000, or in any amount proven at trial against Debtors be deemed non-dischargeable under Section 523(a)(6) of the Bankruptcy Code.

### ON ALL CAUSES OF ACTION

4. For all fees and costs as provided under the law.
5. For punitive damages.
6. For all further relief and the Court deems just and proper.

Dated: December 27, 2022            By: _____

Mary M. Sun
Attorney for Creditor and Plaintiffs
J & J FREIGHT SOLUTIONS, LLC, a California Limited Liability Company;
GOLDEN J GROUP, INC.